B186

*I FP Pending*

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVID FRANCO,

Plaintiff,

v.

DLC LABORATORIES, INC.,

Defendant.

RECEIVED

MAR 2 4 2026

CLERK, U.S. DISTRICT COURT
FOR THE WESTERN DISTRICT
OF PENNSYLVANIA

Civil Action No.: 2:26cv479

COMPLAINT – JURY TRIAL

Plaintiff David Franco, proceeding pro se, brings this civil action against Defendant DLC

Laboratories, Inc., and alleges as follows:

INTRODUCTORY STATEMENT

1

1. This is a products liability action arising from severe chemical injury caused by a defective and unreasonably dangerous consumer product identified as De La Cruz Gentian Violet – Violeta de Genciana – Tincture of Violet one percent First Aid Antiseptic, two fluid ounces (the "Product").

PARTIES

2. Plaintiff David Franco is an adult citizen of the Commonwealth of Pennsylvania residing in Fayette County, Pennsylvania.

3. Defendant DLC Laboratories, Inc. is a corporation organized under the laws of California with its principal place of business at 7008 Marcelle Street, Paramount, California 90723, and conducts business throughout the United States, including Pennsylvania.

JURISDICTION

4. This Court has jurisdiction under 28 United States Code Section 1332 because Plaintiff is a citizen of Pennsylvania, Defendant is a citizen of California, and the amount in controversy exceeds seventy-five thousand dollars exclusive of interest and costs.

5. Plaintiff brings claims under Pennsylvania law, including strict products liability under

Restatement (Second) of Torts §402A

VENUE

6. Venue is proper under 28 United States Code Section 1391 because a substantial part of the events occurred in this District.

FACTUAL ALLEGATIONS

7. The Product is marketed and sold as a routine "First Aid Antiseptic" for use on minor cuts, scrapes, and burns, implying safety for ordinary consumer use externally on skin.

8. The Product contains gentian violet, also known as crystal violet, methylrosaniline chloride, and hexamethyl pararosaniline chloride, a chemically active synthetic dye with known hazardous tissue interactions.

9. Gentian violet strongly adheres to human tissue, penetrates skin, resists removal, and is capable of causing irritation, inflammation, chemical burn-type injury, and prolonged effects .

10. Publicly available Safety Data Sheets confirm hazardous properties including skin and mucosal irritation and adverse effects from exposure.

3

11. These hazardous properties are materially inconsistent with the Product's labeling, which presents it as a mild and routine antiseptic suitable for ordinary use.

12. The labeling emphasizes staining but fails to adequately warn of severe burning, chemical injury, prolonged tissue adherence, and masking of underlying damage, especially to sensitive male genital skin.

13. The labeling warns about eyes but fails to warn that exposure to sensitive areas, including genital tissue, presents a substantially increased risk of injury and potential for severe, extreme pain to genitals.

14. The labeling fails to provide meaningful instructions for decontamination following large-volume exposure or full-bottle discharge.

15. The Product is packaged in a bottle that lacks a simple, inexpensive flow restrictor or any metered dispensing system that some other products include.

16. The design permits immediate, uncontrolled discharge of the entire contents of the bottle during ordinary, routine handling.

17. Defendant knew or should have known that consumers commonly handle such products near sensitive areas, and that minor loss of control is foreseeable.

18. Defendant failed to incorporate widely available and inexpensive safety features, including flow restrictors, that would significantly reduce the risk of uncontrolled discharge.

19. These safety features are widely used in comparable products and add minimal cost while substantially reducing the risk of instant, serious, significant exposure.

20. The absence of these features renders the Product unreasonably dangerous, deviating from reasonable safety practices.

21. A simple flow restrictor would have prevented or substantially reduced the uncontrolled release and resulting injuries.

22. The injury was not caused by misuse, but by the Product functioning as designed under foreseeable conditions.

23. The design made uncontrolled discharge and resulting injury inevitable under ordinary, foreseeable use.

24. On or about April 8, 2024, Plaintiff used the Product as intended.

25. During normal handling, the bottle released a large uncontrolled volume of liquid, rapidly emptying its contents within seconds.

26. The chemical contacted Plaintiff's lap and genital region, including penis and scrotum, and surrounding skin.

27. Plaintiff immediately attempted decontamination using water and soap as directed, but the chemical could not be meaningfully removed.

28. Plaintiff relied on the Product's labeling, reasonably believing the substance was removable, inert, and safe for skin contact.

29. Within hours, Plaintiff experienced rapidly escalating pain of extreme severity, consistent with chemical irritation or burn-type injury, and persisted as prolonged agony.

30. Further decontamination attempts failed due to chemical adhesion to tissue.

31. Plaintiff sought emergency medical care due to severe pain and concern for injury : plaintiff took Tylenol without relief, then called an ambulance to the hospital ER, expecting treatment and relief.

32. Medical providers did not adequately treat the underlying condition, plausibly due to intense staining masking tissue condition.

33. The Product's staining properties plausibly interfered with medical diagnosis, delaying or preventing appropriate treatment.

34. Plaintiff was not provided effective removal or treatment during emergency care, and was discharged in the same painful emergency condition.

35. Plaintiff experienced worsening inflammation, hypersensitivity, and severe, indescribable pain over the next 24 hours.

36. Plaintiff experienced persistent pain, altered sensation, inflammation, and prolonged tissue irritation.

37. Attempts to self-remove the chemical using alternative methods caused additional pain and irritation without meaningful effect.

38. The chemical staining remained embedded in the skin for an extended period.

39. Plaintiff sought emergency care again multiple times, but adequate removal or treatment was still not provided.

40. The Product's label, presenting it as a safe antiseptic, plausibly contributed to underestimation of severity by medical providers.

41. Plaintiff was forced to attempt self-treatment, including alcohol-based cleaning, causing further severe pain and irritation.

42. Plaintiff endured prolonged and severe physical pain, continuous burning, hypersensitivity, and extreme discomfort while fervently trying to remove the chemical, multiple times daily.

43. Plaintiff's daily life was significantly impacted, including impaired movement, hygiene difficulty, ongoing physical pain, and distress, sleep disruption, etc.

44. Plaintiff suffered severe emotional distress, anxiety, and mental anguish due to ongoing extreme pain that excessive OTC pain medication could not prevent.

45. Plaintiff incurred expenses and hardship attempting to remove the chemical, which required weeks of effort using alcohol and sponges, amplifying agony further. Eight weeks later, pain and traces of chemical residue still remained, as verified by Plaintiff's PCP (CRNP).

46. The Product was in the same condition as when it left Defendant's control.

47. Plaintiff used the Product in a reasonably foreseeable manner.

48. Any uncontrolled discharge or spill constitutes foreseeable use or foreseeable misuse.

49. Defendant's design permitted uncontrolled discharge under ordinary handling conditions.

50. Plaintiff's injuries were directly and proximately caused by the Product.

51. If adequate warnings had been provided, Plaintiff would have altered his behavior or avoided use completely.

52. Comparable liquid products utilize flow restrictors and controlled dispensing mechanisms.

53. Defendant's failure to incorporate such features rendered the Product unreasonably dangerous.

54. The Product fails the consumer expectation test.

55. The Product fails the risk-utility test.

56. The hazard is not open and obvious.

57. Defendant had a continuing duty to warn consumers and correct known hazards.

58. Defendant failed to modify the Product or provide additional warnings after sale.

59. Defendant was notified of incident but has asserted it is not responsible for spills, despite such spills being a foreseeable consequence of its design.

60. Defendant tried to avoid liability by characterizing foreseeable design outcomes as user error.

61. Defendant knew or should have known that uncontrolled discharge would expose consumers to hazardous quantities of a chemically active substance capable of causing injury.

62. Defendant's conduct was a substantial factor in causing Plaintiff's injuries.

Plaintiff possesses extensive supporting evidence including, but not limited to, photographs and

videos of injuries, medical records, receipts, and other documents and photos evidencing the chemical injury, prolonged pain, tissue damage, failed medical treatment, and expenses incurred as a result of Defendant's Product. Plaintiff does not submit all these exhibits with this Complaint but reserves the right to produce all such evidence later as necessary.

CLAIMS FOR RELIEF

COUNT I – STRICT PRODUCT LIABILITY (DESIGN DEFECT)

63. Plaintiff incorporates all preceding paragraphs.

64. The Product was defectively designed because it allowed uncontrolled discharge of a hazardous chemical.

65. A safer alternative design existed, including flow restrictors and controlled dispensing mechanisms.

66. The defective design was a direct and proximate cause of Plaintiff's injuries.

COUNT II – FAILURE TO WARN

67. Plaintiff incorporates all preceding paragraphs.

68. Defendant failed to provide adequate warnings regarding the severity of harm from uncontrolled or large-volume exposure.

9

69. Defendant failed to warn of risks to sensitive areas including male genital tissue.

70. Defendant failed to warn that staining could mask underlying injury and interfere with medical diagnosis.

71. These failures rendered the Product unreasonably dangerous.

COUNT III – NEGLIGENCE

72. Plaintiff incorporates all preceding paragraphs.

73. Defendant owed a duty to design, test, manufacture, and label the Product safely.

74. Defendant breached that duty.

75. Defendant knew or should have known of the risks.

76. The breach caused Plaintiff's injuries.

COUNT IV – BREACH OF IMPLIED WARRANTY

77. Plaintiff incorporates all preceding paragraphs.

78. The Product was not fit for its ordinary purpose.

79. The Product was more dangerous than an ordinary consumer would expect.

COUNT V – PUNITIVE DAMAGES

80. Plaintiff incorporates all preceding paragraphs.

81. Defendant acted with reckless indifference and disregard for consumer safety.

82. Defendant knew of the risks yet failed to act. Despite this knowledge, Defendant failed to take reasonable steps to reduce the risk or adequately warn consumers. Defendant's conduct demonstrates reckless disregard for consumer safety and justifies punitive damages to deter similar future misconduct.

JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

DAMAGES

Plaintiff has suffered including but not limited to: severe pain, chemical injury, prolonged tissue damage, emotional distress, memory rumination, and loss of enjoyment of life. Plaintiff seeks compensatory damages in excess of $1,000,000, including physical injury, emotional distress, economic losses, and extreme extended pain and suffering, and further seeks punitive damages in excess of $1,000,000. Plaintiff also requests all costs, and any other relief the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Enter judgment in favor of Plaintiff and against Defendant;

B. Award compensatory damages for, including but not limited to: expenses, other losses, emotional distress, severe physical pain, and prolonged agony ;

C. Award punitive damages to punish and deter Defendant's reckless conduct;

D. Grant such other relief as the Court deems just and proper.

Respectfully submitted on March 16, 2026,

David Franco ,Plaintiff, Pro Se  , 551 5th ave, brownsville pa 15417.